IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN OSWALD,<br><br>    Plaintiff,<br><br>v.<br><br>IDENTIV, INC., et al.,<br><br>    Defendants. | Case No. 16-cv-00241-CRB<br><br>**ORDER GRANTING MOTION TO INTERVENE, DENYING MOTION TO AMEND** |

In October 2017, the Court denied Defendant Identiv, Inc.'s motion to dismiss based on demand futility. See Identiv MTD (dkt. 43); Demand Futility Order (dkt. 56). In April 2018, however, the Court granted three motions to dismiss for failure to state a claim—(1) former CEO Jason Hart's, see Hart MTD (dkt. 67); (2) former CFO Brian Nelson's, see Nelson MTD (dkt. 68); and (3) board chairman James Ousley's, board member Steven Humphreys', and board member Gary Kremen's, see OHK MTD (dkt. 64-4). See Order Granting MTD (dkt. 89). After the Court dismissed Plaintiff Ryan Oswald's claims, Proposed Intervenor Bhanu Chopra filed a motion for intervention (dkt. 92) and Oswald filed a motion for leave to amend (dkt. 38-3). As the Court's decision to dismiss Oswald's claims was based in part on Oswald's lack of standing to challenge conduct that occurred prior to his purchase of Identiv stock on September 24, 2014, Oswald contends that the addition of Chopra, an Identiv stockholder since February 15, 2013, will resuscitate the suit. See Motion for Leave to Amend at 4-5. It will not.

## I. MOTION FOR INTERVENTION

The first motion at issue is Chopra's motion to intervene.

**A.     Legal Standard**

Federal Rule of Civil Procedure ("Rule") 24 provides for both intervention as a matter of right and permissive intervention. See Fed. R. Civ. P. 24. Chopra seeks to intervene as a matter of right or in the alternative, by permission.

Rule 24(a)(2) allows a party to intervene as a matter of right when the movant "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). To prevail on a motion for intervention of right, the movant must demonstrate that "(1) it has a significant protectable interest relating to the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent its interest." Peruta v. Cty. of San Diego, 824 F.3d 919, 940 (9th Cir. 2016) (citation omitted). Although Rule 24(a)(2) is construed broadly in favor of intervenors, Wilderness Soc'y v. U.S. Forest Serv., 630 F.3d 1173, 1179 (9th Cir. 2011) (en banc), the movant bears the burden of showing that he has met each of the four elements, Prete v. Bradbury, 438 F.3d 949, 954 (9th Cir. 2006). "Failure to satisfy any one of the requirements is fatal to the application[.]" Perry v. Proposition 8 Official Proponents, 587 F.3d 947, 950 (9th Cir. 2009).

A court may also permit a party to intervene who "has a claim or defense that shares with the main action a common question of law or fact" under Rule 24(b)(1)(B). Fed. R. Civ. P. 24(b)(1)(B). Permissive intervention to litigate a claim on the merits under Rule 24(b) requires "(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." Beckman Indus., Inc. v. Int'l Ins. Co., 966 F.2d 470, 473 (9th Cir. 1992).

**B.     Discussion**

Although the Court will not allow Chopra to intervene as a matter of right, it does

allow him to intervene by permission.

Chopra may not intervene as a matter of right because he failed to fulfill the second requirement of a motion for intervention of right: demonstrating that "the disposition of the action may, as a practical matter, impair or impede [his] ability to protect [his] interest." Peruta, 824 F.3d at 940. On January 25, 2016, eleven days after Oswald filed this verified shareholder derivative action on behalf of Identiv, Chopra filed a verified shareholder derivative action on behalf of Identiv in the Superior Court for the State of California, County of Alameda. Motion for Intervention at 1. The parties in Chopra's state action stayed that case in favor of Oswald's federal suit on May 2, 2016. OHK Opp'n to Motion for Leave to Amend (dkt. 101) at 4. The Ninth Circuit has held that the resolution of an underlying lawsuit does not impair a proposed intervenor's interest if other means are available to protect the proposed intervenors' interest. See United States v. Alisal Water Corp., 370 F.3d 915, 921 (9th Cir. 2004). Disposition of this action will not impair Chopra's ability to protect his interest, because he could pursue his claims against Identiv in state court.[1] Therefore, Chopra may not intervene as a matter of right. See Perry, 587 F.3d at 950 (failure to satisfy any one of the requirements of a motion for intervention of right is "fatal" to a movant's application).

However, Chopra may intervene by permission because he has an independent ground for jurisdiction, his motion was timely, and there is a common question of law and fact between his claim and Oswald's action. As a citizen of Texas making claims against citizens of California, Arizona, Maryland, and Switzerland for an amount that exceeds $75,000, Chopra has an independent ground for jurisdiction because a federal district court could hear his case based on diversity jurisdiction. See Proposed Third Amended Complaint ("PTAC") (dkt. 91-3). Chopra's motion is also timely. In determining whether a motion is timely, courts consider three factors: (1) the stage of the proceeding at which a

---

[1] A shareholder plaintiff's interest in a derivative suit is limited to compelling the corporation to assert the corporation's right to seek redress for the alleged wrongdoing. See In re MAXXAM, Inc./Federated Dev. S'holders Litig., 698 A.2d 949, 956 (Del.Ch. 1996).

3

movant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay. See League of United Latin Am. Citizens v. Wilson, 131 F.3d 1297, 1302 (9th Cir. 1997). Chopra's motion is timely because the action, despite being two and a half years old, is still in the pleading stage, the defendants were already aware of Chopra's state court action, and Chopra sought to intervene upon learning that Oswald did not have the requisite standing to litigate the claims. Motion for Intervention at 7. There is also a common question of law and fact between Chopra's claim and Oswald's action. Both assert claims for breach of fiduciary duty arising from improper internal controls and inappropriate expenses by Identiv executives and board members. See Chopra State Complaint; Second Amended Complaint ("SAC"). As Chopra fulfills the elements of permissive intervention, he may intervene.

Chopra may also intervene because his intervention is unopposed. Although Hart did not file a reply to Chopra's motion, Nelson, Ousley, Humphreys, and Kremen do not oppose the motion. OHK Response to Motion for Intervention (Dkt. 92) at 1; Nelson's Response to Motion for Intervention (Dkt. 105) at 1. Ousley, Humphreys, and Kremen submit that Chopra should be required to immediately dismiss his pending state court action with prejudice if the Court grants his motion for intervention, but Chopra has agreed to do so only if the Court grants both his motion for intervention and Oswald's motion for leave to amend. OHK Response to Motion for Intervention at 1; Chopra Reply (dkt. 109) at 1. The Court will not require Chopra to dismiss his state court action.

The Court gave Chopra the opportunity to withdraw his motion at the motion hearing, but Chopra declined to do so. Accordingly, the Court GRANTS Chopra's motion to intervene.

## II. MOTION FOR LEAVE TO AMEND

The second motion at issue is Oswald's motion for leave to amend.

### A. Legal Standard

In assessing a motion for leave to amend, courts consider (1) bad faith, (2) undue

4

delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether the plaintiff has previously amended his complaint. See Nunes v. Ashcroft, 375 F.3d 805, 808 (9th Cir. 2003). Futility alone can justify denying leave to amend. Id. at 808.

### B. Discussion

The Court denies Oswald's request to amend because amendment would be futile.[2] The primary changes in the PTAC are the addition of Chopra, the elimination of the waste claim, and the addition of allegations concerning Hart's expenses derived from the Deloitte spreadsheet. See PTAC. As none of these changes would alter the Court's holdings, amendment would be futile.

#### 1. Demand Futility Order

In the Demand Futility Order, the Court held that Oswald does not have standing to bring claims for alleged breaches of fiduciary duty or waste that occurred before he became a shareholder on September 24, 2014. Demand Futility Order at 11. Oswald contends that the PTAC cures this standing deficiency. He maintains that the addition of Chopra as a plaintiff and the Deloitte Spreadsheet "establish that Chopra and Oswald collectively have clear standing to prosecute claims on behalf of Identiv arising from a continuous course of wrongdoing from approximately 2013 through the first quarter of 2015." Oswald Reply (dkt. 108) at 3. However, the Court's demand futility findings would not change based on Chopra's additional time as an Identiv shareholder or the expenses detailed in the Deloitte Spreadsheet. In the Demand Futility Order, the Court still considered conduct that occurred before Oswald became a shareholder, and the Deloitte Spreadsheet, because such conduct "may be relevant to the extent that it demonstrates a pattern of wrongful conduct." Demand Futility Order at 11.

To demonstrate demand futility under the Aronson rule, a shareholder plaintiff must create a reasonable doubt that either: "(1) the directors are disinterested and independent

---

[2] The Court does not reach the other factors.

5

[or] (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." Aronson v. Lewis, 473 A.2d 805, 814 (Del. 1984).

In evaluating the first Aronson prong, the Demand Futility Order examined conduct that occurred before Oswald became an Identiv shareholder on September 24, 2014 and still rejected Oswald's argument that Humphreys and Kremen are interested because they participated in the misuse of Identiv's funds in Las Vegas. See Demand Futility Order at 13–17. The Court evaluated Humphreys' and Kremen's participation in two Las Vegas trips with Hart on July 4, 2014 and September 19, 2014 and found that Oswald did not show that Humphreys and Kremen faced a substantial threat of liability because of their participation in the trips. See Order Granting MTD at 6; Demand Futility Order at 15. The Court also concluded that Oswald did not plausibly allege that the benefits that Humphreys and Kremen gained from the trips were material to them. See Demand Futility Order at 15.

Because the Court examined pre-September 24, 2014 conduct in its analysis of Aronson prong 1, adding a plaintiff with standing to challenge conduct before September 24, 2014 would not change the Court's conclusion about the first prong of Aronson. Although the Court did not consider the Deloitte Spreadsheet in the Order Granting MTD, the Court evaluated the Deloitte spreadsheet in the Demand Futility Order. See Order Granting MTD at 6; Demand Futility Order at 5. Thus, new allegations from the Deloitte Spreadsheet, detailing Hart's expenses, also would not impact the Court's demand futility analysis under the first prong of Aronson. As a result, Oswald's proposed changes to the SAC would not alter the Court's analysis of demand futility under the first prong of Aronson.

Oswald attempted to satisfy the second Aronson prong by showing that Humphreys and Kremen (a) acted in bad faith when they voted to prematurely end the Special Committee investigation, and (b) committed waste by awarding Hart severance and permitting him to only repay a portion of the fund that he diverted for personal use. Demand Futility Order at 20; Order Granting MTD at 2. Oswald did not argue that

6

demand was excused under the second prong of <u>Aronson</u> on any other basis. <u>See</u> Oswald Opp'n to MTD (dkt. 44-2) at 13-15. The Demand Futility Order found demand futility as to the breach of fiduciary duty claim for the termination of the investigation, and Oswald eliminated the waste claim from his PTAC. The addition of a plaintiff with standing to challenge pre-September 24, 2014 conduct and information from the Deloitte Spreadsheet do not change the Court's demand futility findings under the second prong of <u>Aronson</u>. Consequently, the only claim with demonstrated demand futility under the PTAC would continue to be the breach of fiduciary duty claim based on the decision to terminate the Special Committee investigation.[3]

## 2. Order Granting Motion to Dismiss

### a. Ousley, Humphreys, Kremen

Although Oswald demonstrated demand futility as to the breach of fiduciary duty claim based on the decision to terminate the Special Committee investigation, the Court held in the Order Granting MTD that the SAC failed to state a claim against Ousley, Humphreys, and Kremen. <u>See</u> Order Granting MTD at 17. The PTAC also fails to state a claim against Ousley, Humphreys, and Kremen for breach of fiduciary duty based on the termination of the investigation. Like the SAC, the PTAC does not plausibly allege that Ousley, Humphreys, and Kremen terminated the investigation in bad faith. The only addition to the complaint regarding bad faith is the insertion of a heading titled, "The Board Votes to Terminate the Special Committee Investigation in Bad Faith."[4] Moreover, the only additions to the complaint concerning Ousley, Humphreys, and Kremen are a

---

[3] In his reply, Oswald argues that the Demand Futility Order does not limit possible claims to breach of fiduciary duty based on the decision to end the Special Committee investigation because Chopra has standing to litigate claims "arising from the conduct being investigated." Oswald Reply at 4. He is incorrect. <u>See</u> Order Granting MTD at 5 (reiterating that "the decision to terminate the Special Committee investigation … is the only ground for which the Court has found demand futility.").

[4] Of course, the allegation that the Board's decision to terminate the investigation was "in [b]ad [f]aith," <u>see</u> PTAC at 23, is a legal conclusion not entitled to any weight, <u>see</u> <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986) (citation omitted) (court is "not bound to accept as true a legal conclusion couched as a factual allegation.").

7

United States District Court
Northern District of California

summary of the Demand Futility Order, noting that demand was excused as to the breach of fiduciary duty claim based on the termination of the Special Committee investigation, and a sentence stating that the Court granted the three motions to dismiss in April 2018. See PTAC at 23, 3. The standard for bad faith is high. See In re Walt Disney Co. Derivative Litig., 906 A.2d 27, 67 (Del. 2006) (bad faith is "where the fiduciary intentionally acts with a purpose other than that of advancing the best interests of the corporation, where the fiduciary acts with the intent to violate applicable positive law, or where the fiduciary intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties."). In the Order Granting MTD, the Court concluded that Oswald did not meet the bad faith standard. Order Granting MTD at 16, 17. It held that neither Oswald's recommendation of the termination of the investigation, nor Humphreys' and Kremen's acceptance of that recommendation, rise to the level of bad faith given the apparent thoroughness of the Special Committee's work, detailed findings, recommendations, and remediation. Id. Because the PTAC adds hardly anything to the breach of fiduciary duty claim against Ousley, Humphreys, and Kremen, it still does not adequately plead bad faith.

### b. Hart and Nelson

The PTAC also fails to state a claim against Hart and Nelson. The Court noted in the Order Granting MTD that the Demand Futility Order eliminated the claims against Hart and Nelson "full stop" because "neither man participated in the decision to terminate the Special Committee investigation" and Oswald "lacks standing to bring claims arising out of pre-September 2014 conduct." Order Granting MTD at 5. The PTAC eliminates the waste claim, and the only claim with demonstrated demand futility, breach of fiduciary duty based on the termination of the Special Committee investigation, is inapplicable to both men because they did not participate in the decision to terminate the investigation.

In his reply, Oswald suggests that the Court's ruling that demand is futile as to the Board's decision to terminate the Special Committee investigation means that he can proceed on any claim based on the conduct the Special Committee was investigating.

1  Oswald Reply at 4. He contends that "when demand is futile due to a Board decision, officers who benefited from the decision are proper defendants in claims arising from the underlying conduct even though, as officers, they did not participate in the decision that resulted in excusal of demand." Id. at 4-5 (citing McPadden v. Sidhu, 964 A.2d 1262 (Del. Ch. 2008), In re Atmel Corp. Deriv. Litig., No. C 06–4592 JF, 2008 WL 2561957 (N.D. Cal. June 25, 2008), and Weiss v. Swanson, 948 A.2d 433 (Del. Ch. 2008)).

The cases Oswald cites are distinguishable because all involved officers who indisputably benefitted from the challenged board decision. In McPadden, the court held that the plaintiff had stated a claim against an officer who benefitted from a board decision to sell a wholly-owned subsidiary to a management team led by the officer for a fraction of the subsidiary's fair market value. 964 A.2d at 1263, 1273. Similarly, the courts in Atmel and Weiss held that plaintiffs stated claims against officers who benefitted from board decisions to provide them with backdated options. Atmel, 2008 WL 2561957 at *6; Weiss, 948 A.2d at 449. In contrast, it is not clear that Hart and Nelson benefitted from the termination of the Special Committee investigation. As a result of the investigation, Hart was replaced by Humphreys as CEO and required to repay $35,784 of the non-business expenses for which he was initially reimbursed. SAC ¶¶ 72, 89. Nelson was demoted following the investigation. Id. ¶ 77. It is uncertain whether Hart and Nelson would have suffered further consequences if the investigation had continued. The Special Committee need not have investigated the criminality of Hart's or Nelson's actions. See Order Granting MTD at 15. Nor is it clear that the Special Committee would have found any additional improper expenses after such a thorough investigation: Deloitte reviewed 1,987 expense reimbursement submissions, totaling $1,011,185.02. SAC ¶ 62. The cases that Oswald cites do not permit a court to merely assume that an officer has benefitted from a board decision. Nor do they hold that a plaintiff can pursue any claim against an officer so long as it relates in some way to a viable claim (i.e., a claim for which the court has found that demand is futile) against the board. Indeed, that would create a massive loophole in the rule that a plaintiff must prove that demand is futile on a claim-by-claim basis. See

9

Order Granting MTD at 4.

Even if Hart and Nelson did benefit from the Board's decision to terminate the investigation, and were therefore proper defendants in the breach of fiduciary duty claim based on the termination of the Special Committee investigation, Oswald would still fail to state a claim. The addition of Hart and Nelson as defendants does not change the thoroughness of the investigation, see id. at 16–17, and the PTAC would still fail to state a claim that the investigation's termination was in bad faith.[5]

Oswald's argument that he can maintain a claim against Hart and Nelson for a board decision because Hart and Nelson are officers of Identiv also fails because a plaintiff cannot raise an argument for the first time in a reply. See Bazuaye v. INS, 79 F.3d 118, 120 (9th Cir.1996) ("Issues raised for the first time in the reply brief are waived."); Hadley v. Kellogg Sales Co., 273 F. Supp. 3d 1052, 1098 (N.D. Cal. 2017) ("The Court need not consider this argument as it is raised for the first time in Defendant's reply brief."); Dragu v. Motion Picture Indus. Health Plan for Active Participants, 144 F. Supp. 3d 1097, 1113 (N.D. Cal. 2015) ("[I]t is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers.") (citing Dytch v. Yoon, No. C 10-02915 MEJ, 2011 U.S. Dist. LEXIS 22594, at *3 (N.D. Cal. Mar. 7, 2011)).

Amendment would be futile because the proposed changes to the SAC would not resuscitate the claims against Hart, Nelson, Ousley, Humphreys, or Kremen. As futility of amendment alone can justify denying leave for amendment, the Court DENIES Oswald's motion for leave to amend.

### III. CONCLUSION

For the foregoing reasons, the Court GRANTS Chopra's motion to intervene and

---

[5] In addition to failing to state a claim based on the termination of the investigation, the PTAC also fails to state a claim based on any conduct underlying the investigation because there is no demand futility for any claims arising from the underlying conduct in this case. See discussion supra Part II.B.1.

DENIES Oswald's motion for leave to amend.

**IT IS SO ORDERED.**

Dated: July 16, 2018



CHARLES R. BREYER
United States District Judge